ADDISON MACULLAR et al., Appellants, *v.* JOHN W. McKINLEY, Respondent.

In February, 1881, defendant, who was doing a small business as a tailor, in response to an application from a reporter of a commercial agency, made this statement : " Have a stock on hand of $2,500 and no liabilities, as I pay cash for all my purchases." In June another application being made to him by the same agency he refused to make any statements. In August thereafter, on being solicited by an agent of the plaintiffs to make a purchase of goods of them, the agent as an inducement offering " long time," gave an order for some goods which was transmitted to plaintiffs. The sale was consummated by them, they being led to fill the order by a report from said agency which, after quoting said statement as made by defendant, stated in substance that defendant had failed in business twice, the last time three or four years ago, and effected a compromise at fifty cents ; that his wife's income was said to support the family and he was not doing much more than making a living for himself ; that he was not known to be asking credit, as because of his slowness in making payments those who had sold him declined doing so except for cash. The defendant's refusal to make a statement in June was entered on the books of the agency with the statement that he was regarded as of little responsibility. Other orders were given by defendant under similar circumstances in September and October, 1881, which were filled by plaintiffs. In November, 1881, he made a general assignment by which it appeared that he owed nearly $2,000 for money borrowed in 1880, but it did not appear that he owed any thing for merchandise or stock except to plaintiffs. In an action for

obtaining the goods by false pretenses, *held,* that plaintiffs were properly nonsuited ; that the evidence failed to show any intent on the part of defendant to deceive or mislead the plaintiffs, or any fraud or false representations inducing them to make the sales.

*Eaton, Cole & Burnham Co.* v. *Avery* (83 N. Y. 31), distinguished.

(Argued May 4, 1885; decided June 9, 1885.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made December 30, 1882, which affirmed a judgment in favor of defendant, entered upon an order nonsuiting the plaintiffs on trial. (Reported below, 17 J. & S. 5.)

The nature of the action and the material facts are stated in the opinion.

*C. C. Prentiss* for appellants. When called upon for a statement in June, 1881, defendant's refusal to make one was not a retraction or withdrawal of the one made in February, 1881. ( *Wright* v. *Brown,* 67 N. Y. 1, 4–6.) Even if the defendant's testimony is taken as a positive denial of the statement of plaintiffs' witnesses, Sutton and Prentiss, it was error to dismiss the complaint. ( *Eaton* v. *Aspinwall,* 83 N. Y. 31, 37, 38.) A person furnishing information to a mercantile agency thereby makes it his agent to communicate his statements to persons who inquire of it; and if his statements are false, and the inquirer sells goods to him in the belief that the statements are true and suffers damage thereby, he is liable therefor the same as if he had personally made the statements to his creditors. ( *Naugatuck Cutlery Co.* v. *Babcock,* 22 Hun, 481, 485, 486 ; *Morgan* v. *Skiddy,* 62 N. Y. 319, 325 ; *Morse* v. *Swits,* 19 How. 275, 286 ; *Weigh* v. *Boylan,* 85 N. Y. 394 ; *Holbrook* v. *N. J. Zinc Co.,* 57 id. 616 ; *Cross* v. *Sackett,* 6 Abb. 247, 272, 275 ; *Eaton* v. *Avery,* 18 Hun, 44 ; *Cazeau* v. *Mali,* 25 Barb. 583 ; *Newberry* v. *Garland,* 31 id. 129 ; *Peck* v. *Guerney,* 6 H. of L. 377 ; *Harper* v. *Chamberlain,* 11 Abb. 234.) As one of the plaintiffs testified that they made the sales believing in and relying upon the truth of defendant's original statement, it was a question of

fact for the jury whether, under the circumstances of the case, they believed the witnesses, and whether defendant's false statement was what really induced the sale. (*Smith* v. *Chadwick*, 46 L. T. [N. S.] 702, 708, 717 ; *Eaton, C. & B. Co.* v. *Avery*, 18 Hun, 31, 37, 39.)

*Robert W. Todd* for respondent. The complaint does not state facts sufficient to warrant a judgment for fraud. (*Morris* v. *Talcott*, 96 N. Y. 100 ; *People* v. *Baker*, id. 340.) To entitle plaintiffs to recover herein, they must show that the defendant made the representations alleged, knowing them to be false; that he made them with the intent and design of cheating and defrauding the public and gaining credit for himself, and that the plaintiffs relied upon them and were induced by them to sell the goods in question to the defendant. (*Chester* v. *Comstock*, 40 N. Y. 576 ; *Lefler* v. *Field*, 52 id. 621 ; *Paisley* v. *Freeman*, 3 T. R. 51 ; *Oberlander* v. *Spiess*, 45 N. Y. 175.) Plaintiffs cannot recover where the facts and circumstances are such that they ought to have excited suspicion and led to inquiry. (*Williamson* v. *Brown*, 15 N. Y. 354 ; *Herrlich* v. *Brennen*, 11 Hun, 194 ; *Long* v. *Warren*, 68 N. Y. 426 ; Cooley on Torts, 487.) It must be clearly shown that defendant made his statements to the mercantile agency with fraudulent intent to use such agency as an instrument in accomplishing a fraud upon his vendor or some other seller. (*Victor* v. *Henlein*, Daily Reg., Oct. 11, 1884.) The February report, which Bradstreet & Company had on their books, ceased to be of any value as soon as the later report of June 20, 1881, was spread upon their books. (*Whitney* v. *Groot*, 24 Wend. 82 ; *Roders* v. *Warner*, 8 Johns. 119 ; *Holden* v. *N. Y. & E. Bk.*, 72 N. Y. 286 ; *Bennett* v. *Buchan*, 76 id. 386.)

DANFORTH, J. The question in this case arises upon an exception to the ruling of the trial judge that there was no evidence to go to the jury. The action was for an alleged fraud and deceit, by representations stated to have been made by the defendant as to his business and pecuniary condition, and by

which the plaintiffs were induced to sell him goods in August, September and October, 1881, upon credit. The plaintiffs were wholesale merchants in the city of Boston, and the defendant was a small tailor in the city of New York. He was solicited, at his place of business, to make the purchases in question by an agent of the plaintiffs, who, as an inducement, offered "long time," and then took the orders and transmitted them to the plaintiffs. No representations or statements were made to this salesman, nor was any communication made by the defendant to the plaintiffs. They never saw him. But Wesson, one of the plaintiffs, testified that the particulars of the sales were examined by him and the sale consummated, and that he was led to do so by a report from Bradstreet's Commercial Agency, received from it in May, 1881, which, so far as material, is in these words :

"McKinley, J. W., Tailor,          New York City.

"States,

"'Have a stock on hand of $2,500, and no liabilities, as I pay cash for all my purchases.'

"He has been in the above business for the past forty years, during which time he failed twice, the last time some three or four years ago, and effected a compromise at fifty cents;
\* \* \*

"His wife is said to own property, the income of which supports the family. Parties who have known him many years speak of him as an honest, industrious man ; though doing a small, close business, and not doing much if any thing more than making a living for himself. Is not known to be asking any credit, as he became so very slow in his payments that those who sold him for years decline selling him except for cash.

"21..................... F.............*Feb.* 25, 1881.

"*Nov.* 22, 1881.  To Macullar, Parker & Co.

"The correctness of this report is not guaranteed, but having been obtained by us in good faith — from authorities deemed reliable — it is transmitted to you in strict confidence for your

exclusive use and benefit, and in accordance with the terms of the contract existing between us.

" Respectfully,
" THE BRADSTREET COMPANY."

The statement by defendant was made in February to a reporter of the agency, who applied to him for it. Another application was afterward, in June, made to him by the same agency, but he refused to respond, saying in substance that "a statement would not do him any good if made," and the agency on the 20th of June, 1881, spread upon its books as follows: " He declines giving any information; he is believed to be working with his wife's money; it is stated he has failed two or three times; regarded as of little responsibility, and jobbing-houses in the city say they would sell him only for cash." This was distributed to those who inquired.

The goods were not paid for, and the defendant made an assignment for the benefit of creditors, November 21, 1881, by which it appeared that he owed $1,977.90 for money borrowed in 1880. It did not appear that he owed any thing for merchandise or stock.

The defendant moved for a nonsuit upon the grounds : 1st, that there was no evidence of any intent to deceive or mislead the plaintiffs in the sale of the goods, or 2d, fraud or false representations to induce them.

We agree with the court below in the opinion that the motion was properly granted. Although fraud is a question of fact, and therefore in general for the jury to answer, it should only be submitted to them upon competent and sufficient proof,— in such a case as the present, *First*, That the plaintiffs in making the sale acted under a mistake or misapprehension, and *second*, that the defendant designedly caused the mistake or misapprehension for the purpose of inducing the sale. Here the facts were ascertained, and the court could say as matter of law (*Morris* v. *Talcott*, 96 N. Y. 100), that there was in evidence no misrepresentation or untrue statement intentionally made by the defendant for the purpose of procuring credit from the plaintiffs. It might

be that the plaintiffs made an imprudent sale, but it is impossible to find that the defendant made a fraudulent purchase. The appellants put the case upon the report made in February by the commercial agency to the plaintiffs, and to sustain it cite *Eaton, Cole & Burnham Co.* v. *Avery* (83 N. Y. 31). The doctrine of that case should not be so stretched. There was a direct and an intended connection between the representation and the credit obtained. The report given in August was referred to when application was made for credit in September, and goods delivered upon faith in it. To the creditor in that case it was a present representation. How utterly unlike is the one before us! The plaintiffs were subscribers to the agency, presumably therefore availing themselves of the means of information afforded by it. Their salesman in August, in September and in October, undertook to sell to the defendant goods on credit. They then had, as they assert, knowledge of him through the agency. They knew that the information communicated to them was obtained in February, six months before the earliest of these sales. There seems to be little in it to excite a desire for pecuniary relations; but sufficient certainly to suggest further inquiry at the same source of information, when in six, seven, and eight months afterward this same man applied for that credit, which, to their knowledge, his former vendors refused.

What a creditor might have known in the common course of business, he must be presumed to have known. In view of these things it cannot be said that the representations of February had any legitimate connection with the credits extended in August, September and October.

But again : We think the point well taken on the motion for a nonsuit, that there was no evidence of an intention on the defendant's part to deceive or mislead the plaintiffs. This is essential to the cause of action and must be proved, not presumed. (*People* v. *Baker*, 96 N. Y. 340 ; *Ward* v. *Center*, 3 Johns. 271.) The statement of February was not made as a basis of credit, or as by one asking, expecting, or desiring credit. On the contrary, he says: " I pay cash for all my purchases," implying thereby, " I ask no credit." He did not

claim to be desirous of any.  Had he then asked for credit it would have been natural and becoming in the one applied to to have made further inquiry.  As it is, the credit seems to have been thrust upon, not obtained by him.  In all this there is no excuse for non-payment, but every reason why the debtor should not suffer in this action like a criminal or as for a tort.

The judgment should be affirmed.

All concur, except RUGER, Ch. J., RAPALLO and EARL, JJ., not voting.

Judgment affirmed.