ORR & LINDSEY SHOE COMPANY ET AL. V. JIM HARRIS ET AL.

No. 3168.

1.  **Fraudulent Attachment.**—An attachment obtained upon affidavit "that the defendants were about to dispose of their property with intent to defraud their creditors," can be avoided by subsequent attaching creditors upon showing that the affidavit was false and known to be false by the affiant at the time it was made.

2.  **Same—Reasonable Ground of Belief.**—An affidavit upon reasonable ground of belief made to obtain an attachment, although false, will sustain such attachment in an attack by subsequent attaching creditors. See facts.

3.   **Grounds for Attachment.**—That debtors threatened a conversion of their ac-
counts, forming the greater part of their assets, into promissory notes presumably
or probably negotiable, would indicate an intention to transfer the notes to third par-
ties, and would be an effectual method of putting the same beyond the reach of creditors.

APPEAL from Kaufman.   Tried below before Hon. ANSON RAINEY.
The opinion states the case.

*William H. Allen,* for appellants.—1.   Appellants being subsequent
attaching creditors next after appellees, have such an interest in the
funds on deposit and the subject matter of this suit as would permit
them to plead the falsity of the affidavits for the attachments sued out
by appellees; and it appearing that said affidavits were false, and were
known to be false when made by the appellees, the attachments issued
thereon should be set aside as fraudulent, and the property attached
should be applied to the payment of appellant's judgments.   Bateman
v. Ramsey, 74 Texas, 589; Freiberg v. Freiberg, 74 Texas, 122; John-
son v. Heidenheimer, 65 Texas, 263; Wade on Attach., sec. 221; Wait
on Fraud. Con., secs. 224, 231, 232, 233, 239, 241.

2.   To justify the attachments of appellees, the burden was on them
not only to show that the defendants were disposing of their property,
but also to prove that this was being done with the intent to defraud
their creditors.   Wade on Attach., sec. 96; Hober v. Nassitts, 12 Fla.,
589; Seidentapf v. Annabil, 6 Neb., 524; Stevens v. Middleton, 26
Hun, 470; Wilson v. Forsythe, 24 Barb., 105.

*J. O. Terrell,* for appellees.—The evidence showing that the debts
claimed by appellees against defendants were correct and just, and that
the attachments were sued out without fraud or collusion on the part of
any one, and that at the time they were sued out and levied the defend-
ants were about to dispose of by far the largest portion of their assets,
with the intent to defraud their creditors, and that the attachments of
appellees were sued out in good faith and were levied before those of
appellants, the judgment of the lower court should be by this court
affirmed.   Wade on Attach., sec. 97; Newman v. Krain, 34 La. Ann., 910.

TARLTON, JUDGE, *Section B.* — January 30, 1889, the appellees,
Jim Harris and B. M. Lyon, brought separate suits by attachment in
the District Court of Kaufman County against Bonds & Lyon, a firm
composed of J. E. Bonds and W. H. Lyon.   Harris sought to recover
a debt of $3000, the amount of a note dated January 15, 1889, and
maturing thirty days after date; Lyon to recover a debt of $3424.30,
the aggregate amount of three promissory notes.   The affidavit for at-
tachment made by each of these plaintiffs set out as a ground for the

writ "that the defendants were about to dispose of their property with intent to defraud their creditors."    ∘

Subsequent to these two attachments the appellants herein—the Orr & Lindsey Shoe Company, the Ely & Walker Dry Goods Company, and the Schwab Clothing Company—each brought a suit by attachment against the same defendants and on the same grounds for the writ as that above set out. The writs were all levied on the same property, the stock of goods of Bonds & Lyon, invoiced at the value of $9060, and not sufficient to meet the demands of all the attaching creditors.

The above named subsequent attaching creditors intervened in the suit of Jim Harris against Bonds & Lyon. They alleged that the attachments of Jim Harris and B. M. Lyon were fraudulent and void, for the reason (among others not necessary to be here stated) that the ground for attachment, viz., "that the defendants are about to dispose of their property with intent to defraud their creditors," was false, and the affiants knew it to be false when the affidavits were made. The intervenors sought, therefore, to have the attachments of Harris and Lyon set aside as to them.

B. M. Lyon intervened, setting up his levy and lien, denying the fraud charged, and praying that his lien be declared superior to the lien of appellants.

January 3, 1890, the court, trying the case without a jury, rendered judgment for the appellees against Bonds & Lyon, and against the appellants on their plea of intervention. From this judgment the appellants appeal.

It is not necessary to set out in extenso nor to discuss all of appellants' assignments of error. In effect they present the following contention: That the ground of attachment above stated and relied on by appellees in their suits against Bonds & Lyon was false and was by them known to be false when the writs were sued out, and that on the prayer of appellants intervening as subsequent attaching creditors, the court should, as to them, have set aside as fraudulent the writs of appellees.

We readily agree with appellants, that if the ground of attachment sworn to by appellees was false, and if they knew it to be false, the process should be denounced as fraudulent, and any benefit to be derived from it should be subordinated to the lien of the subsequent attaching creditors intervening. Bateman v. Ramsey, 74 Texas, 589. On the other hand, however, if appellees were actuated by fair and honest motives in securing the writ—if they believed the ground stated by them to be true—if probable ground existed for suing out the writ, it would not be fraudulent. Conscious falsehood, with reference to the ground here relied upon, would be required to taint the process.

We must therefore resort to the facts, inquiring whether they show that the ground relied upon by appellees was true or whether they had reason to believe it to be true. The record contains no conclusions of

law and fact by the trial judge. The judgment, however, necessarily involves a finding by him that the ground set out in the affidavits of appellees was true, or that the affiants had reason to believe it to be true. If there be evidence to support this finding, it should be upheld by us.

The appellee Jim Harris was the proprietor of the Harris Bank. John B. Harris, the cashier of the bank and son of the appellee, testified, that on January 30, 1889, W. H. Lyon, of the firm of Bonds & Lyon, came to the bank with the statement that they were pressed on a debt of $2000; that the claim was in the hands of an attorney for collection, and that they desired to borrow the money from the bank with which to meet the debt. The cashier declined to lend the money, but insisted that the bank should have security for the payment of its note (the one in suit), and which was wholly unsecured. Instead of furnishing the security Lyon remarked to witness, with great emphasis, that the firm had about $15,000 in notes and accounts, and that they would put the balance of the accounts into notes due the next fall and put them all into their pockets. Witness thereupon instructed his attorney Mr. Terrell, who was present and who had heard the conversation, to prepare attachment papers; he also sought his father, to whom he reported the conversation. Jim Harris, on being thus informed, made the affidavit for the purpose, as he testified, of saving his debt, and because of the declaration of Lyon that the firm intended to put the larger part of their assets into their pockets.

The appellee B. H. Lyon testified, in effect, that when he heard of the declared intention of the debtor firm to put their assets into their pockets he felt uneasy about his debt and made the affidavit.

The statement thus made was certainly of a nature to beget a reasonable apprehension in the minds of appellees that the parties were about to dispose of their property with intent to defraud their creditors. A conversion by the debtors of their accounts into promissory notes, presumably or probably negotiable, would indicate an intention to transfer the notes to third parties, and would be an effective method of putting their assets beyond the reach of any process to which appellees might resort.

We conclude that there was testimony justifying the evident finding of the court. The judgment should be affirmed.

*Affirmed.*