### ROTHSCHILD *et al.* v. PORTER.

*(City Court of New York, General Term. May 25, 1892.)*

1. DECEIT—FALSE REPRESENTATIONS—PLEADING.

  In an action to recover damages for false representations as to the solvency of a firm to which plaintiff sold goods on a written order taken by a traveling salesman, a denial of "each and every allegation in said complaint contained, not heretofore specifically denied or admitted," was sufficient to put plaintiff to proof of the sale and delivery of the goods.

2. SAME—EVIDENCE—ORIGINAL ENTRIES—HEARSAY.

  The court erred in allowing plaintiff's "credit man" to testify to a sale and delivery of the goods from information gained from the "reference book" of plaintiff's concern, from the written order of the salesman, and from entries in plaintiff's ledger, which was not a book of original entries, and was not kept by the witness

**3. SAME—SCIENTER.**

The court also erred in refusing to submit to the jury the question of *scienter* and fraudulent intent on the part of defendant, and in instructing them that they were simply to determine whether defendant was guilty of making the false representations charged.

Appeal from trial term.

Action by Simon Rothschild and others against Charles C. Porter. From a judgment for plaintiffs, defendant appeals. Reversed.

Argued before McGOWN and McCARTHY, JJ.

*Gruber & Landon*, for appellant. *Townsend, Dyett & Einstein*, for appellees.

McCARTHY, J. This action was brought to recover the sum of $1,074.50, with interest from October 1, 1889. It was claimed in the complaint that plaintiffs had been damnified to this amount by reason of their having sold and delivered to defendant goods, wares, and merchandise in reliance upon the representations of the latter that on July 20, 1889, his indebtedness was about $2,500, and his assets were about $16,000, which said representations had proved to be false, inasmuch as at the time such indebtedness was over $6,000, and such assets much less than $16,000, and that the defendant had made the said representations with the intent to defraud the plaintiffs. The above allegations were denied by the answer. The trial was had before a justice and a jury on the 8th day of January, 1892. A verdict was rendered in favor of the plaintiffs for $1,220.63, which was the sum demanded in the complaint, with interest thereon. This appeal is taken from the judgment subsequently entered for the sum of $1,397.40, and also from an order of the said justice denying the defendant's motion to set aside the verdict and for a new trial. Upon the trial only one witness testified. He was Frank Rothschild, Jr., a credit man of plaintiffs, who was called in their behalf. It appears by the evidence adduced that between February 27 and April 10, 1889, the plaintiffs sold to Ridley & Porter, of Louisville, goods to the amount of $517.59, which were paid for. These goods were not sold upon any personal representations of the defendant, but upon information which plaintiffs received from Dun's and Bradstreet's mercantile agencies, and various merchants, including Armstrong, Cator & Co., of Baltimore. It was sought to be proved that afterwards the plaintiffs had a correspondence with defendant, consisting of three letters, two of which were alleged to have been written by plaintiffs on July 8 and 16, 1889, respectively, and one to have been written by the defendant on July 20th, in answer to the plaintiffs' letter of the 16th. The contents of the alleged letter of July 8th were not disclosed in evidence, and the defense admitted that it was unknown to them whether the letter alleged to have been written by defendant on July 20th was in answer to the plaintiffs' letter of July 8th or July 16th. The whole case of the plaintiffs rested upon proving a false and fraudulent statement of material fact in the letter of July 20th, followed by a sale and delivery of goods to defendant in October, 1889. It did not appear that the postscript of the letter was false, nor that the statement that defendant, during the season, owed as high as ten and twelve thousand dollars was false, nor that any part of the truth of the letter was questioned, except the statement reading as follows: "My indebtedness is about $2,500, due to different millinery jobbers." The only evidence offered of the falsity of this statement was the testimony of Rothschild's credit man to a conversation purporting to have been had between him and defendant on or about the 25th day of October, 1889, when it was claimed defendant admitted that the said statement was untrue. It is contended by appellant that there was no false representation or fraudulent intent on the part of defendant. It is further contended that there was no competent proof of a sale and delivery of goods in reliance upon whatever representations, if

any, were made.  It was also contended on this appeal by the appellee that by the answer the sale and delivery of the goods were admitted.  The answer if as follows:

"The defendant in the above-entitled action, for answer to the complaint of the plaintiffs therein—*First.* Denies that he has any knowledge or information sufficient to form a belief as to the allegation that the plaintiffs were at the times mentioned in the complaint, and still are, partners in business in the city of New York under the firm name of S. Rothschild & Bro.  *Second.* Denies that he has any knowledge or information sufficient to form a belief as to the allegation that on July 20, 1889, he, the defendant, for the purpose of inducing the plaintiffs to sell goods to him on credit, represented to the plaintiffs in writing that his indebtedness at that time was about twenty-five hundred dollars, and that his assets were about sixteen thousand dollars.  *Third.* Denies that he has any knowledge or information sufficient to form a belief as to the allegation that the plaintiffs, believing the said representations to be true, and relying thereon, sold and delivered to the defendant on credit goods, wares, and merchandise amounting in the aggregate to one thousand and seventy-four dollars and fifty cents, no part of which has been paid.  *Fourth.* Denies that he has any knowledge or information sufficient to form a belief as to the allegations that, as plaintiffs are informed, believe, and aver, the said representations were false; that the defendant was indebted at the time he made the said representations in a sum exceeding six thousand dollars, and that his assets were much less than sixteen thousand dollars; and defendant denies that he made the said or any representations with the intent to defraud the plaintiffs, and defendant alleges in this behalf that whatever representations were made by him to plaintiffs on or or about July 20, 1889, or on any other date mentioned in the complaint herein, if any representations were made on such dates, were true.  *Fifth.* Denies the allegations of the complaint that by reason of the matters aforesaid the plaintiffs have been damaged to the extent of one thousand and seventy-four dollars and fifty cents.  *Sixth.*  Denies that the plaintiffs have ever been damaged by reason of any acts or representations of defendant in any sum whatsoever.  *Seventh.* Denies each and every allegation in said complaint contained not hereinbefore specifically denied or admitted.  Wherefore defendant demands judgment against the plaintiffs that the complaint herein be dismissed, together with the costs of this action.

"GRUBER, BARD & LANDON, Attys. for Defendant.

"Office and postoffice address:  No. 41 Park Row, New York city."

We think that the third denial was a denial of the third allegation in the complaint, repeating the whole thereof, and did not by terms of inference admit any part thereof; and that the seventh denial, being as follows:  "Denies each and every allegation in said complaint contained, not heretofore specifically denied or admitted,"—is a good denial, and puts the plaintiff to the proof of the sale and delivery of the goods in order to prove his damages.  See *Griffin* v. *Railroad Co.*, 101 N. Y. 348, 354, 4 N. E. Rep. 740. But, whether this be correct or not, the plaintiffs evidently tried the cause on the assumption that the answer was sufficient, and it was necessary for them to prove the sale and delivery of the goods.  The goods were conceded by the plaintiffs to have been sold in Louisville, Ky., not by witness; nor was he present, nor were they delivered or shipped by him to the defendant.  His position in the plaintiffs' business was that of office man, attending to the credits, collections, and correspondence.  The only evidence attempted on this branch is as follows.  "*Question.* I will come now to the selling by your firm of these goods in question.  Have you the order that was sent to you by the defendant?  *Answer.* It was a salesman order."  Continuing, the witness said:  "I have not it here; but I have my ledger, which contains the account.  I know of the shipment of these goods to Mr. Porter.

I check every dollar's worth of goods that is shipped from our house. I checked these goods myself. There are no goods shipped from the house without my sanction. *Q.* Do you know the amount? (Objected to. Objection sustained.)" Continuing, the witness said: "I can easily prove the shipments by duplicate shipping receipts. Bills were mailed to the defendant. *By Defendant's Counsel. Q.* Did you mail them to him? *A.* No, sir. When I check bills in our establishment, I don't go down to see the goods sent away. You know I do not. Yes, I do know whether such goods are ever actually shipped after I sign the bills. I know of my own knowledge that these goods were shipped. *Q.* Then you do not know of your own knowledge that they were shipped? *A.* Yes, sir; I do. *Q.* How do you know of your own knowledge of something you did not personally see? *A.* Because I have shipping tickets which I checked. *Q.* That is before the goods were shipped? *A.* Upon the day of the shipping of the goods. *Q.* But this was before the goods were shipped? *A.* Yes, sir. *Q.* You didn't see these goods put in boxes for Mr. Porter? *A.* No, sir. *Q.* Therefore you didn't see them shipped? *A.* No, but I knew that they were shipped, although I did not see them shipped. *Q.* Didn't this statement which you received from Mr. Porter, plaintiffs' Exhibit No. 1, strike you as being somewhat indefinite? *A.* I cannot tell you how much it struck me. *Q.* When a man says he owes about $2,500, do you understand that as just about $2,500? *A.* No, not exactly. It might be, for instance, $2,510. (Defendant's counsel moves to strike out $2,510 as not responsive. Motion granted.) Redirect examination by Mr. Einstein: *Q.* Refer once more to the ledger account of Mr. Porter, (presenting book.) Do you recollect what you are asked by counsel on the other side in relation to that account? You are asked as to the spring purchases. Does the ledger account show that there were any fall purchases? (Objected to on the ground that the ledger is not evidence against the defendant, that it is incompetent, and that the sale and delivery of the goods cannot be proven in any way. Objection overruled. Exception.) *A.* Yes, sir. *Q.* What does it show as to fall purchases? Read the entries there. (Same objection as above, and ruling and exception.) *A.* August 31st, to merchandise, November 1, five off, thirty days, folio 1158, sale book, $789. September 18, same items on sales book, folio 1229, $181. September 25, same items, folio 1250m, sales book, $72.50. Oct. 1st, same items in another sales book, folio 453, $32. *Q.* Do you know the total of these items? *A.* $1,074.50. *Q.* Were these merchandise that you sold him after the receipt of this letter of July 20th? (Objected to as not being the proper way to prove the sale of the goods. Objection overruled. Exception.) *A.* Yes, sir." Continuing, the witness said: "These goods were sold to him on credit,—five off thirty days. No part of that sum has been paid to me. In making those sales, the letter of July 20th had the effect upon my mind of causing me to ship the goods. *Q.* Is there anything in this reference book which has not been read? Please read it. *A.* I want to say to the jury that I was not influenced by Messrs. Armstrong & Cator's information. I will omit the names. (Defendant's counsel objects.)"

This was error, as the information was mere hearsay, gained from a written order not produced at the trial, and taken by a salesman who is not present. Neither was this ledger a book of original entry, nor was it kept by the witness, nor in his handwriting. The permitting of the witness to make such entries evidence for any purpose of the transactions in this action was, we think, error. *Ives* v. *Waters*, 30 Hun. 297, 298; *Beatty* v. *Clark*, 44 Hun, 127; *Vilmar* v. *Schall*, 35 N. Y. Super. Ct. R. 67; *Dooley* v. *Moan*, (Sup.) 11 N. Y. Supp. 239. At the close of the judge's charge, which up to that point we think correct, he was requested by defendant's counsel to charge as follows: "*Third.* The fact that the representations were false is not sufficient to enable the plaintiffs to recover in this case. *The Court.* I decline to so charge.

(Exception.)" This was error, for it was at once directing the jury to disregard the previous portion of his charge in respect to the essentials required, and to say to them "that the fact that the representations were false is sufficient." As an evidence that this refusal to charge must have had some effect on the minds of the jury, they, after retiring to their room, sent the following message to the court, and which was read to counsel for plaintiff and defendant: "Can we bring in a verdict for the plaintiffs for the full amount, with interest, and exonerate the defendant from fraudulent intent? *Plaintiffs' Counsel.* It is not a matter for the jury to determine. It is their duty to find a verdict one way or the other. *The Court.* I will send in this answer: 'No, you are simply to determine whether the defendant was guilty of having made false and fraudulent representations to the plaintiffs upon the faith of which they sold the goods in question.' (Defendant's counsel excepts.)" This instruction to the jury was again error. ANDREWS, J., in *Brackett* v. *Griswold*, 112 N. Y. 467, 20 N. E. Rep. 376, says: "There is no doubt a question as to what elements are requisite to sustain an action for false pretenses. The essential constituents of such an action have been understood from the time such actions were first maintained. They are tersely stated by CHURCH, C. J., in *Arthur* v. *Griswold*, 55 N. Y. 400, viz.: 'Representation, falsity, *scienter*, deception, and injury.' There must have been a false representation, known to be such, made by the defendant, calculated and intended to influence the plaintiff, and which came to his knowledge, and in reliance upon which he, in good faith, parted with property or incurred the obligation which occasioned the injury of which he complains. All these circumstances must be found to exist, and the absence of any one of them is fatal to a recovery." See *Arthur* v. *Griswold*, 55 N. Y. 400; *Macullar* v. *McKinley*, 99 N. Y. 357, 358, 2 N. E. Rep. 9; *Coffin* v. *Hollister*, 124 N. Y. 644, 26 N. E. Rep. 812. The refusal to submit to the jury the *scienter* and fraudulent intent was erroneous. See *Stitt* v. *Little*, 63 N. Y. 427, 431. For these reasons the judgment should be reversed, and a new trial granted, with costs to abide the event.