Thomson, J.
On December 1, 1896, the John V. Farwell Company, a corporation, brought suit against John W. McGraw and Sanford T. Georgia, partners as J. W. McGraw & Company, who were dealers in furniture, to recover an indebtedness of $1,126.71, on account of goods sold and delivered by the plaintiff to the defendants between the 12th day of August, 1896, and the 15th day of October, 1896. A writ of attachment was sued out in aid of the action and levied upon a stock of goods of the defendants. The grounds of attachment, set forth in the affidavit, were that the defendants had fraudulently disposed of their property, so as to hinder and delay their creditors; that they were about, fraudulently, to dispose of their property, so as to hinder and delay their creditors, and that they fraudulently contracted the debts sued on, and by false pretenses and fraudulent conduct procured the property of the plaintiff. The defendants executed a forthcoming bond, and the goods were returned to them. They then traversed the affidavit for attachment. At the trial of the issues tendered by the traverse when the plaintiff rested, on motion of the defendants, the court ordered a nonsuit. Afterwards the cause was tried upon its merits, and judgment rendered against the defendants for $305. The plaintiff has brought the record here for review, alleging error in the proceedings Avhich resulted in the nonsuit.
The errors assigned go to the action of the court in refusing to receive evidence offered by the plaintiff. A witness for the plaintiff, Mr. Whitehead, who was a partner of the defendant McGraw, from May until September, 1896, after testifying that McGraw had made reports of his standing to several commercial agencies, was asked this question by plaintiff’s counsel: “ State what value he put upon that stock of goods to the mercantile agencies, if you know.” He was then asked this question: “ Do you know of any instance where the defendant has sold that stock of goods at less than the sale price, not counting the freight?” Each of these *469 questions was objected to by tbe defendants, as incompetent, immaterial and irrelevant, and the objections were sustained. The plaintiff produced a witness, J. E. King, who sold goods for McGraw during the summer of 1896, and asked him this question: “ State what, if anything, the defendant McGraw said to you, while you were in his employ, of his desire and wish to dispose of his entire stock of goods for cash, so that he might have the money in his pocket.” For the same reasons on which the previous rulings were based, the witness was not allowed to answer the question.
Where it is impossible to say, from a question to a witness, whether the answer will be material or relevant to the issues, upon objection made, it is the duty of the party seeking to produce the testimony, to state what he proposes to prove by the witness, and, if necessary, to offer to connect the evidence proposed, with other proof, from which its relevancy or materiality will appear; and, in the absence of such statement, or such offer, it is not error to reject the evidence. Marshall v. Hancock, 80 Cal. 82; Boland v. Railroad Co., 106 Ala. 641; Ladd v. Coal & Mining Co., 66 Fed. Rep. 880; 1 Thompson on Trials, §684.
The witness Whitehead was asked whether he knew of any instance of McGraw selling that stock at less than the sale price, not counting the freight. What was meant by “ that stock,” is not entirely clear. But it appears that McGraw came to Cripple Creek from Chicago, in May, 1896, bringing a stock of goods, worth about $4,000. The witness either came with him, or followed him almost immediately. It was concerning that stock that McGraw made reports to the commercial agencies, — one before he left Chicago, — and, so far as appears, “ that stock ” did not include any purchases from the plaintiff. Presumably the purpose of the question was to elicit testimony in support of the charge that the defendants had fraudulently disposed of their property, so as to hinder and delay their creditors. Now, suppose that the witness had answered that he did know of an instance where McGraw had sold “ that stock,” wholly or partially, at less *470 than the sale price, not counting the freight. That would have been responsive to the question and a complete answer to it. But unless the testimony had been supplemented by other proof, it would have been utterly immaterial. The record contains no evidence that McGraw, or McGraw & Company owed a dollar to any person prior to the purchases from the plaintiff; and if there was any such transaction as the question supposes, it may have been had long before those purchases were made, and when there were no creditors to defraud. The question called for no answer, which without proof of other facts or circumstances, would throw the smallest light upomMcGraw’s intent in making the sale, or upon the effect of the sale, so far as third persons were concerned. The same observations are applicable to the question put to the witness King, asking what McGraw said to him while he was in the latter’s employ, concerning his (McGraw’s) desire to dispose of his goods and put the money in his pocket. King was in McGraw’s employ about two and one half months before the defendants had any dealing with the plaintiff, and while, so far as appears, they were not in debt at all; and if King had said that while he was in McGraw’s employ, the latter told him that he desired to sell the goods and put the money in his pocket, he would have answered the question fully. Anything further would have been outside of the terms of the question, and, therefore, not responsive. Now, upon such an answer as that, no court could make a finding unfavorable to the defendants. The necessary data to enable it to do so, would be wanting.
In reference to the question put to Whitehead concerning the value McGraw put upon “ that stock ” of goods to the mercantile agencies, there is not much to be said. Waiving its indefiniteness as to time, and also the query whether it is competent to prove a report to a mercantile agency in that way, it called for no answer, which, without proof of other facts, would have been of any benefit to the plaintiff. The only allegation in the affidavit for attachment to which the question could have any reference, was the one that the de *471 fendants fraudulently contracted the debt sued on, and by false pretenses and fraudulent conduct procured the property of the plaintiff. In order to the fraudulent contraction of the debt, or the fraudulent procurement of the plaintiff’s property, the plaintiff must have been misled by something that the defendants did or said. To connect a report to a mercantile agency with the fraudulent contraction of a debt, or the fraudulent procurement of property, it must be shown that the report was false to the knowledge of the person making it, and that it was communicated to, and relied upon by, the person who gave the credit, or parted with the property. Eaton v. Avery, 83 N. Y. 31; Macullar v. McKinley, 99 N. Y. 353. Unconnected with other proof, it was utterly immaterial what value McGraw put upon the stock. In support of none of the foregoing questions was there any proposition by the plaintiff to show, in any manner, that the evidence sought, was, or could be, pertinent or material, to any issue in the case; and the court committed no error in refusing to permit the questions to be answered.
Another question to which the court sustained objection, was the following, to the witness King: “ State fully what your instructions were, — what the defendant McGraw stated to you to do in carrying’ out your duties as salesman.” This was a very comprehensive question. A complete answer to it would, almost, necessarily, have embraced matters neither material nor relevant to the issues. It would probably have brought out' confidential communications from the employer to the employee, in which the plaintiff could not possibly be interested, and which outsiders had no right to know. King may have been instructed that certain specified persons were punctual and honest, and should have such credit as they might desire; while certain others were irresponsible and unscrupulous, and should have no goods without the cash.
Not only would instructions of such a nature be immaterial, but it would be taking an unwarrantable liberty with men’s business to permit them to be divulged. The impropriety of the question is apparent without argument.
*472 We are referred to two decisions, each of which it is contended is in conflict with conclusions we have reached. We shall examine them. In Buckstaff v. Bussell, 151 U. S. 626, the appellees had contracted to furnish to the appellants certain machinery, specifically described, and guaranteed as to work, horse power, economy of fuel, and durability. To a suit by the appellees for the purchase price, the appellants counterclaimed that the machinery was purchased to be used in a paper mill; that the appellees well knew the purpose for which it was bought; and well knew that if it was not of the capacity and efficiency specified in the contract, it would cause the appellants great injury, cost and damage, by reducing the quantity, and degrading the quality, of the paper to be manufactured, etc. The counterclaim further averred the insufficiency of the machinery; and set forth the damage sustained by the appellants.. Mr. Utt, one of the appellants, testified for the defense. After stating that himself and Buckstaff conducted the negotiations with the representative of the plaintiff, for the purchase of the machinery, he was asked this question: “ What conversation did you have with him, if any, about the purpose for which the machine was to be used, and the necessity for steam capacity in the boilers ? ” The question was objected to for incompetency, irrelevancy and immateriality. The supreme court held that the question was proper, because it was relevant to the counterclaim, and admitted of an answer that tended to support it. The difference between the relation of that question to the issue there presented, and the relation of the questions which have been the subject of our discussion, to the issues presented in this case, is manifest. The counterclaim charged knowledge by the appellees of the specific purpose for which the machinery was purchased. Utt testified that he participated in the negotiations for the purchase, and the evident purpose of the question was to prove from the conversation which took place at the time, that the appellees had the knowledge with which the appellants charged them. The evidence necessary to show the materiality of the conversa *473 tion, bad already been introduced. To connect it with the allegation in the counterclaim, no offer of supplementary proof was necessary. There is nothing in this decision which tends to sustain the position of the plaintiff, or which conflicts in the least with anything we have said.
In Shoe Co. v. Harris, 82 Tex. 273, Harris brought suit by attachment against Bonds & Lyon. The ground of the attachment, alleged in the affidavit, was that the defendants were about to dispose of their property with intent to defraud their creditors. Subsequently the Orr & Lindsey Shoe Company brought suit by attachment against the same defendants, alleging the same grounds. Both writs were levied upon the same property. The shoe company intervened in Harris’s suit, alleging that when his affidavit was made, the ground of attachment which it alleged was false, and known by him to be false. The purpose of the intervention was to have the attachment of Harris set aside as to the shoe company. The proof showed the following facts: Harris was the proprietor of the Harris Bank. The bank held the unpaid note of Bonds & Lyon. W. H. Lyon, a member of the firm, came to the bank with the statement that the firm was pressed on a debt of $2,000, and that the claim was in the hands of an attorney for collection. He asked the bank to loan the firm the money to meet the debt. The cashier declined to lend the money, but insisted that the bank should have security for the payment of its note, which was wholly unsecured. Instead of furnishing the security, Lyon remarked to the cashier, with great emphasis, that the firm had about $15,000 in notes and accounts, and that they would put the balance of the accounts into notes, and put them all into their pockets. The bank then commenced the attachment proceedings. The court held that the statement so made, amounted to a threat by the firm to put its assets beyond the reach of any process to which Harris might resort, and justified the attachment. The testimony connected the statement of Lyon directly with, and applied it directly to, the debt which Bonds & Lyon owed the bank. It was self-explanatory, *474 and needed no elucidation from extrinsic sources. But the question to King, calling for statements by McGraw, was so framed, that a proper answer would not indicate any wrongful purpose, or any purpose detrimental to the rights of creditors, on the part of the defendants, and herein lies the reason why the Texas decision has no applicability here.
We have disposed of all the questions which counsel have discussed, and our conclusion is that the judgment was right, and should be affirmed.

Affirmed.