SAN ANTONIO, U. & G. R. CO. v. BOBO.

(Court of Civil Appeals of Texas. San Antonio. Jan. 28, 1914.)

1. EMINENT DOMAIN (§ 205*)—CONDEMNATION OF RIGHT OF WAY—AMOUNT OF AWARD—SUFFICIENCY OF EVIDENCE.

Evidence, in an action to condemn 5.72 acres of land for a railroad right of way *held* to sustain a verdict awarding defendant $150 for the land actually taken.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 544; Dec. Dig. § 205.*]

2. EMINENT DOMAIN (§ 137*)—CONDEMNATION OF RIGHT OF WAY—AMOUNT OF AWARD.

Where, in condemnation proceedings, it appeared that two small parcels of land condemned for right of way purposes were farming land and parts of two large tracts, each consisting of both farming land and rough land, and it also appeared that the farming land was worth more if sold in connection with the rough land than if sold separately, defendant was entitled to an award for the land actually taken, on the basis of the higher valuation.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 367–369; Dec. Dig. § 137.*]

3. APPEAL AND ERROR (§ 1170*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Under Court of Civil Appeals rule 62a (149 S. W. x), providing that a judgment shall not be reversed for errors not probably producing an improper judgment, admission of defendant's testimony in condemnation proceedings, that he would not have the railroad go across his land for $500, was not ground for reversal where it was evident that such opinion related to the damage to the remaining land, and the only complaint on appeal was relative to the award for the land actually taken.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4032, 4066, 4075, 4098, 4101, 4454, 4540–4545; Dec. Dig. § 1170.*]

4. EMINENT DOMAIN (§ 263*)—CONDEMNATION OF RIGHT OF WAY—REVIEW—CORRECTION OF JUDGMENT.

Where the judgment in condemnation proceedings, instead of describing the land, con-

tains references to the petition for a description thereof, it may be reformed by the appellate court so as to describe the land as it was described in the petition.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 687; Dec. Dig. § 263.*]

Appeal from Live Oak County Court; F. H. Church, Judge.

Condemnation proceedings by the San Antonio, Uvalde & Gulf Railroad Company against W. A. F. Bobo. From a judgment awarding damages to defendant, applicant appeals. Reformed and affirmed.

Dougherty & Dougherty and B. D. Tarlton, Jr., all of Beeville, for appellant. W. W. Caves, of Oakville, for appellee.

MOURSUND, J. We adopt appellant's statement of the nature and result of the suit: "This is an action brought by the San Antonio, Uvalde & Gulf Railroad Company, applicant, against W. A. F. Bobo for the condemnation of two tracts of land, containing in all 5.72 acres. The purpose for which the land was sought to be condemned is for a right of way necessary for the construction and operation of plaintiff's line of railroad. Upon a hearing before the commissioners, appointed by the county judge, the applicant was awarded the right of way prayed for, and was assessed the sum of $70 as all the damages due the defendant by reason of the taking and appropriation of the right of way. The defendant in due order filed his objection to the award of the commissioners, and appealed to the county court of Live Oak county. The case was tried on May 7, 1913, at the regular term of the Live Oak county court, before a jury, and was submitted upon the single issue of the fair market value of the property taken, and the resulting damages, if any, to the remainder of the property by reason of the construction and operation of the plaintiff's line of railroad on the tracts sued for; the parties having agreed to every other issue involved. After hearing and considering the evidence and the charge of the court, the jury returned a verdict in favor of the defendant in the sum of $150 as the value of the 5.72 acres actually taken, and for $75 as damages to the remainder of the property, and awarded to the applicant the right of way prayed for."

[1] By the first assignment appellant contends that the verdict is excessive in so far as it allows Bobo $150 for the land actually taken. The land taken consists of two parcels; one containing 2.06 acres, and the other 3.66 acres. The statement of facts is very unsatisfactory. It is impossible to tell whether some of the statements refer to the entire tracts of land or to the parcels taken for right of way. Portions of the testimony were given with reference to a map, and by pointing to the map the matter was made plain to the jury; but in several instances

we can only conjecture what was meant by the witness. Bobo testified that the parcel taken by the railroad out of the upper tract was level farm land, and that "the character and quality of the land where the railroad crosses on the lower tract is a good, level mesquite land, and exclusive of washes." He also said: "The part taken is a choice part of it, which I only have a part of. It is farming land." He testified that the land taken was worth $25 or $30 per acre; also that the actual value of the land taken was $180. He also stated: "That land is now worth less to me. It was not for sale before, and is not for sale now. I do not care to sell it. It is not worth $18 per acre now; but I do not care to sell it." This statement, we think, related to the remaining land, although it is found immediately following a reference to the value of the land taken. One of the tracts owned by Bobo contained 292 acres, the other, 300 acres. Bobo also testified that he supposed 25 per cent. of the land was farming land. Appellant's witness McMurray testified that the value of farming land in the vicinity of Bobo's land was $25 or $30 per acre. He had ridden along the side of the north line of Bobo's upper tract, and said that where the right of way enters said tract it is a black sandy loam. He described the lower tract as "varied," saying that it contained gullies and hills, and the 320 acres in a body would not be worth much; that the land he saw in the upper tract would be worth $15 or $20 per acre. He said the land on the upper tract along the right of way was better than on the lower tract along the right of way, because the latter was "a great deal up and down." He also said: "In answer to question of Mr. Tarlton's, I stated that I knew the fair market value of farming land, and that it was worth about $25 or $30 in small parcels; something like $15 taking the tracts as a whole, about $15, as a whole. Taking it in separate parcels, some would be worth more and some less than $15 per acre. The farm land by itself would be worth more than $15 per acre. There are some 50 or 60 acres of farming land. You can sell it for more than $15 per acre. The farm land by itself would be worth $25 or $30 per acre. The balance would be worth $15. The rough land would not be worth more than $5 per acre. The market value of Mr. Bobo's land, I would say, is about $15 per acre. I do not know that we could get more for the farm land in spots. The land, as it is, is not worth any less than it was before April 9th, and the fair market value of it is the same." It will be noted that this witness' testimony is very unsatisfactory. He was never asked the direct question, what each of the two parcels taken for right of way was worth, either considered alone or as a part of the larger tract, and his testimony does not negative the idea

that said land so taken might be worth $150. He testifies that the land is rough where the right of way enters the north tract, but does not say at what point the good land begins. One of appellant's assistant civil engineers testified that on the north or upper tract a 3-foot cut extends about 125 feet, and from there on a fill of a maximum of 5 feet. This testimony does not disclose what the character of the land is. He described, evidently by pointing out on the map, where the right of way entered the south tract, and said: "Two gullies and rock hillside extend along the side for 800 feet. The grade rises just about one-half foot to the 100 feet. * * * The character of the right of way in the south tract is an embankment. It is about 12 feet high. It is very broken. The next station along there is 10 feet. Then there is a one-foot cut. It is a very mild cut, and extends some 50 feet until it gets to the grade. It is a grade the balance of the way." The witness did not say the gullies and rock hill were upon the right of way, and it is not reasonable to suppose they were, or even so close as to make it difficult to construct the railroad grade. Railroad companies can better afford to pay for level land than to go to great expense in building their grade. The cuts and fills mentioned are to be expected in the distances of 900 feet and 1,400 or 1,500 feet, and do not negative the idea that the land taken was suitable for agricultural purposes.

[2] The court, as a part of his charge, said: "The court instructs you the fair cash market value of land condemned for a railroad right of way is not the market value of the strip taken when considered by itself, but its value as a part of the tract of which it forms a part." This statement is based upon the holding in the case of Routh v. Traction Co., 148 S. W. 1152. Said case does not lay down the rule hinted at by appellant, namely: That for the strip taken the damage must be estimated by taking the value of the entire tract, and allowing such proportionate part thereof as the number of acres in the strip bears to the number of acres in the entire tract. The idea underlying all rules for measuring damages is that compensation must be made, and it is frequently discovered that rules which have been equitable and just when applied to a given state of facts fail to accomplish justice when applied to another state of facts. A person whose land is condemned can never be required to take less than the fair cash market value of the portion taken when considered by itself; but in the Routh Case it was seen that, as a narrow strip was taken, which in itself had only a small cash market value, the allowance of such value would not compensate the owner, and therefore it was deemed just and right that the market value considered as a part of the entire tract should be allowed. If the bodies of farming land owned by appellee were worth $25 to $30 per acre, if sold in connection with the rough land, then, as the right of way, according to appellee's testimony, was choice farming land, the same should not be taken for less than the farming land would bring as parts of the two tracts. The testimony contradicting appellee on the quality of the land taken, as has been pointed out, was vague and uncertain; but, even if it raised a conflict, the same must be determined in appellee's favor in deference to the verdict. As to the value, it will be noted that appellant's witness McMurray admitted that the farm land by itself would be worth $25 or $30 per acre. The sum allowed by the jury is about $26.25 per acre, and, considering that appellee testified that the right of way took a "choice part," we cannot say that the verdict is unsupported by the evidence.

What we have said requires the overruling of the second and third assignments, which also relate to the sufficiency of the evidence to sustain the verdict for $150 for the land taken.

[3] By the fourth assignment complaint is made because the court permitted appellee to state that he would not have the railroad go across his land for $500, which statement he modified by stating that he would not have it go across his land for less than said amount, and that he estimated his damages at said sum. No complaint is made that excessive damages were allowed as accruing to the remaining land, and in fact only $75 was allowed, although $500 was prayed for. It is evident that appellee's opinion related to the damage to the remaining land, which he estimated at the sum mentioned in his petition. As the jury found separately on the value of the land taken and the damage to the remainder, and no complaint is made that the $75 allowed as damages to the remainder is excessive or unsupported by competent evidence, we will not go into the question whether error was committed in the matter complained of by this assignment, as such error, if it be one, was harmless. See rule 62a for Courts of Civil Appeals (149 S. W. x).

The fifth assignment questions the correctness of the court's ruling in admitting the testimony of witness Stuart in regard to the effect upon cattle of fencing them off from water, but leaving a 30-foot crossing over the right of way. We think the witness had sufficiently qualified to testify regarding the matter; but, as the testimony only affected the question of damages to the remaining land, no harm was done by admitting the evidence, if it was error to do so.

[4] By the sixth assignment complaint is made because the judgment of the trial court fails to describe the parcels of land condemned, but refers to the petition for description thereof. Article 6534 (Statute of 1911) provides that, when the right of way

has been acquired, as provided in the articles preceding the same, the judgment of the court shall vest such right in the company so acquiring the same. The judgment complies with the law, unless it be necessary that it contain the description of the land set out in the petition instead of referring thereto. We doubt whether this is necessary, though it is best to do so. Railway v. Knoepfli, 82 Tex. 273, 17 S. W. 1052; Railway v. Moore, 51 Tex. Civ. App. 205, 111 S. W. 758. In this case no motion to reform the judgment in this respect was made; but appellant, in its motion for new trial, merely made the general complaint "that the judgment of the court fails to properly describe the property condemned." Appellees consenting, the judgment will be reformed by this court so as to describe the parcels of land as they are described in the petition. The costs of the appeal, however, will be adjudged against appellant.

Judgment reformed and affirmed.