GEORGE F. VIETOR et al., Respondents, *v.* DAVID LEVY et al., Appellants.

*Facts authorizing the setting aside of judgments and transfers of accounts as being fraudulent as to creditors — judgment by confession, with good consideration, set aside as being part of a fraudulent scheme — an assignee of accounts chargeable with the value thereof.*

A debtor may confess judgment in favor of his more highly favored creditors in an amount sufficient to exhaust his entire estate.

What evidence will justify the trial judge in finding a transaction to have been a fraudulent scheme, entered into and carried out by the several parties thereto, with intent to hinder, delay, cheat and defraud creditors, and in setting aside judgments, transfers of accounts, and all subsequent proceedings had under the judgments, including the appointment of a receiver in proceedings supplemental to execution, considered.

Though some of the judgments by confession, recovered against an insolvent firm, may not have been attacked so as to permit a finding that they were without consideration, yet, if the object sought to be secured by a succession of steps, of which the confession of such judgments was one, was to cheat and defraud the creditors of the debtor firm, it matters not whether the firm was indebted in the sums confessed or not.

Creditors of an insolvent firm who have obtained by fraud, transfers to themselves of accounts in its favor, and have assigned the same, are properly charged with the value of such accounts, although the consideration of the assignment thereof by such creditors was for a much smaller sum.

APPEAL by the defendants, David Levy and others, composing the firm of Cohen Bros. & Co., and by Morris Batt, from a judgment of the Supreme Court in favor of the plaintiffs, rendered at the New York Special Term and entered in the office of the clerk of the city and county of New York on the 15th day of November, 1892, appointing a receiver, and charging the defendants, other than David Levy, with various amounts aggregating $32,315.82, with notice of an intention on the part of the defendants to bring up for review upon such appeal the interlocutory judgment rendered at the New York Special Term and entered in the office of the said clerk of the city and county of New York on the 13th day of July, 1892.

The trial judge found as a fact that the object and purpose of said proceeding on the part of said Isaac Levy and the said debtors was to perfect, and carry out, and complete, the fraudulent scheme hereinbefore referred to, and in order to obstruct and prevent the cred-

itors of said D. Levy & Sons from reaching the assets of said firm which were lawfully applicable to the payment of their debts, and said judgments and all the proceedings thereafter, including the appointment of said receiver, were perfected, carried out and connived at for the purpose of cheating and defrauding the creditors of the defendants composing the firm of D. Levy & Sons, and for no other purpose.

And as conclusions of law, among others:

*First.* That each of said judgments and executions in favor of Matilda Levy, the defendants composing the firm of Cohen Bros. & Co., Louis M. Levy, Morris Batt, Rachael Levy and Isaac Levy, mentioned in the foregoing findings, were and are void as against the plaintiffs, as having been made with intent to hinder, delay, cheat and defraud the creditors of said D. Levy & Sons, and should be so adjudged.

*Second.* That the proceedings subsequent to execution on the judgment of Isaac Levy, under and by which Morris J. Friedlander was appointed receiver on the 6th of November, 1890, should also be adjudged fraudulent and void as against the plaintiffs, and said order appointing said Morris J. Friedlander be set aside as far as it affects the plaintiffs herein.

*Third.* That the transfer of accounts made by the defendants composing the firm of D. Levy & Sons to Matilda Levy, dated the 20th of September, 1890, and the transfer by her of the same accounts to Louis M. Levy, dated October 18, 1890 ; also the transfer made by the defendants composing the firm of D. Levy & Sons to the defendants composing the firm of Cohen Bros. & Co., dated September 20, 1890, and the transfer by Cohen Bros. & Co. of the same accounts to Louis M. Levy, dated October 8, 1890, and the transfer of accounts made by the defendants composing the firm of D. Levy & Sons to Isaac Levy, dated September 26, 1890, and the transfer by Isaac Levy of the same accounts to Louis M. Levy, dated October 20, 1890, and each of them, was and is fraudulent and void as against the plaintiffs herein, as having been made with intent to hinder, delay, cheat and defraud the creditors of D. Levy & Sons, including these plaintiffs, and each of said transfers should be adjudged fraudulent and void as aforesaid, and should be set aside.

*Fourth.* That a receiver should be appointed herein of the property taken under and by virtue of the judgments and executions aforesaid, as well as of the accounts and proceeds of said accounts transferred as hereinbefore set forth.

*James M. Hunt,* for the appellants.

*Blumenstiel & Hirsch,* for the respondents.

PARKER, J. :

The statute prevents a debtor by a general assignment from devoting more than one-third in value of his estate to the payment of preferred creditors. (Chap. 503, Laws 1887.) But he may accomplish that result by omitting to make a general assignment, and, instead, confessing judgment to the more highly favored creditors in an amount sufficient to exhaust his entire estate. (*Manning v. Beck,* 129 N. Y. 1.)

That method of securing creditors, whom the firm of D. Levy & Sons regarded as having stronger equities appealing for protection than the others (and who happened to be relatives) was doubtless suggested by their legal adviser. Had they honestly devoted their property by this method to the payment of their creditor relatives, both the method and the result would have been unassailable.

But the thought is suggested from the reading of the record, that when the firm found how easily they could prevent any one of their creditors from receiving a single dollar on account of his demand, the idea was born of so using the power to pay, or not to pay, as they should elect, as to secure a substantial benefit and advantage to themselves.

The transaction of which complaint is made was intended by the insolvent firm to appear to the public and their inquisitive merchandise creditors as follows : Having been sued by an unrelenting creditor named Morris Batt, the firm exerted every effort to avoid failure, but success had not yet crowned their efforts when the day arrived on which Batt could and did enter judgment.

Failure then being certain, judgments were thereupon confessed to other creditors, who immediately issued executions and caused a levy to be made upon the property and assets of the firm.

Thereafter a public sale was had, at which the various judgment creditors bought in the property for an amount less than the aggregate of their judgments; the purchasers then sold the property to Louis M. Levy, who thereafter continued the business in his own name, employing as clerks the members of the late firm other than the senior member.

This transaction, which upon a superficial examination would appear to be straightforward and legal, the learned trial judge has found to be a fraudulent scheme, entered into and carried out by the several defendants, with the intent to hinder, delay, cheat and defraud the creditors of D. Levy & Sons. And by the decree the judgments, as well as certain transfers of accounts made six days before the entry of the judgments, and all subsequent proceedings had under the judgments, including the appointment of Isaac Levy as receiver in proceedings supplemental to execution, are set aside. A personal judgment was also rendered against the several parties who obtained a benefit under the proceedings in the several amounts received by them.

The statute which the judgment under review adjudges the defendants violated applies as well to a sale under an execution as to a transfer direct from the debtor. The judgment, execution and sale by the sheriff constitute the conveyance by which the title is transferred. (*Stimson* v. *Wrigley*, 86 N. Y. 332.)

Whether the conclusion reached by the trial court, that the proceedings taken, by which the property of the firm was transferred to Louis M. Levy, was in contravention of the statute, is well founded will now be considered.

In examining and weighing the evidence which induced the judgment, we shall have in mind that he who alleges fraud must prove it; that the burden rests upon him to show affirmatively the facts and circumstances necessarily tending to establish the probability of guilt. And at the same time remember that those who attempt to perpetrate frauds take all the precautions that occur to them to make the transactions appear honest, and rarely confess their misconduct, whether under oath or otherwise. That in such cases proof of the fraud must be established, if at all, by facts and circumstances which deny the protestations of commercial virtue, which nearly always fall from the lips of those who try to outwit the law.

Examining more fully the details of the several transactions which we have alluded to in the manner in which it is natural to presume the defendants thought it would appear to inquirers, we find in the first place that Morris Batt, the apparently diligent creditor who pressed his claim to judgment, was a son-in-law of the senior member of the firm of " D. Levy & Sons," and a brother-in-law of the other members. That his conduct was not offensive to the firm is manifested by the fact that on the same day on which he took judgment by default against them, they also confessed judgment for another sum in his favor.

It likewise appears that Batt had no desire to be unreasonable with his relatives, for after the sale he not only turned over the goods which were purchased for him to another brother-in-law, " Louis M. Levy," but he also turned over to him the money which he alleges he received in satisfaction of his judgment. Six days prior to the entry of the judgments, the firm transferred certain book accounts to " Matilda Levy," others to " Isaac Levy," still others to " Cohen Brothers & Co.," amounting in all to over $35,000. On the 26th of September, 1890, judgments were entered against them in favor of " Morris Batt," " Louis M. Levy," " Cohen Brothers & Co.," " Matilda Levy " and " Rachel Levy," aggregating $22,000. The firm was composed of " David Levy " and his three sons, Michael D., Henry J. and Morris M.

The relationship existing between the several persons to whom accounts were assigned, or judgments confessed, and one or more members of the insolvent firm, is as follows :

Matilda Levy is the wife of Michael D. ; Rachel Levy is the wife of David and the mother of the other members of the firm ; Isaac Levy is a brother of David ; Morris Batt is a son-in-law, while the members of " Cohen Brothers & Co." are brothers of Matilda Levy. The fact that the parties associated with the firm of D. Levy & Sons in the alleged fraud are related to them, is not, of course, in itself proof of fraud, but it is a circumstance which may well be considered in connection with the other facts, to which allusion will be made.

Before proceeding with the examination of the steps taken subsequent to the confession of the judgments, we will consider briefly the claim of Matilda D. Levy for $12,000, to secure which accounts

were assigned aggregating $14,500, and a judgment confessed in a sum exceeding $10,000.

The trial court found, and upon evidence warranting the finding, that the indebtedness for which judgment was confessed to her was not an obligation of the firm, but instead was the individual debt of her husband. Yet it appears that six days prior to the confession of judgment there was assigned to her firm accounts of a face value exceeding $14,500, from which there has been actually realized, after deducting expenses of collection, $10,374.39, and notwithstanding this transfer of good accounts to her, a judgment was confessed in her favor for over $10,000. After the judgments were entered, executions were at once issued, and a levy made by the sheriff upon all the property and assets of the firm (excepting, of course, the good accounts, which had been transferred six days before), and a sale thereunder had, Louis M. Levy, son of the senior member of the firm, and a brother of the others, purchasing the property for the judgment creditors, in pursuance of a previous arrangement with Batt, Cohen Brothers & Co., and Nathan Abraham, an uncle.

While the property was struck down to the several parties mentioned, Levy made the bids, giving the names of the purchasers to the auctioneer, and specifying the amount chargeable to each purchaser. The persons in whose names the property was purchased at once turned over the property to Louis M. Levy. The individuals to whom the accounts had been transferred immediately retransferred such accounts to the same person; in a few instances checks had been received in payment of accounts and they were turned over in lieu of the accounts.

Thus it happened that by the eighteenth of October, or within a period of about twenty-two days from the confession of judgments, all the property and accounts of the firm of " D. Levy & Sons " passed into the possession and apparent ownership of their kinsman, " Louis M. Levy."

He gave to the purchasers, as a consideration of the transfer to him, his individual demand notes, and it is an interesting as well as important fact, that these demand notes were given, not for the amount of the purchase, but for the amount of the alleged indebtedness of the insolvent firm as expressed in the judgments confessed.

If these apparent purchases had been real, this arrangement would have resulted rather fortunately for Levy as an investment.

To illustrate, Cohen Brothers & Co.'s claim was only $5,000, but the accounts assigned to them, and retransferred to Levy in consideration of his demand note, were $15,000, and at the time of the trial there had been actually realized thereon, after deducting expenses of collection, nearly $9,000.

The accounts transferred to Isaac Levy for an alleged indebtedness of $2,500, amounted to over $6,500, on which had been realized at the time of the trial nearly $3,500.

The result of these transactions was, that all of the property of the firm had apparently become the property of Louis M. Levy, the relative creditors having ostensibly accepted him as their debtor in the place of the firm, with their position apparently improved in this, that the substituted debtor was not burdened with the obligations of the firm to the general creditors.

Now it appears that Louis M. Levy was a travelling salesman for one Schwab, whose business was that of a jeweller, and as he understood that business he concluded to remain in it, and has done so. But the new business had to be carried on, and so he employed, he says, his three brothers, who were members of the late firm of D. Levy & Sons, to conduct it.

A power of attorney was given to Michael Levy to sign and indorse the name of Louis M. Levy at the bank, and thereafter Louis M.'s relations to his employer continued without embarrassment by reason of the new enterprise in which he had embarked on the capital of others.

While the business, which was of the late firm of " D. Levy & Sons" was continued, at the same place, with the same persons in charge, with one exception, but under a different name, and apparently beyond the reach of creditors from some of whom portions of the property transferred, as has been described, had been purchased, one thing yet remained to be done to secure the transaction from being attacked by a hostile receiver, and so Isaac Levy, to whom had been assigned accounts amounting to over $6,000 in payment of an alleged claim of $2,500, transferred these accounts to Louis M. Levy for $1,500, with the understanding if more should be realized he would be paid the $1,000. It may be remarked in passing, that

at the time of the trial of this action nearly $3,500 had been collected from these accounts.

But the reason for accepting $1,500 for the accounts is explained by the record, which discloses that on the thirtieth day of October, twelve days after the property had all been transferred to Louis M. Levy, Isaac obtained a judgment against D. Levy & Sons for this $1,000. On it an execution was immediately issued and returned unsatisfied the day following.

With such diligence did the creditor Levy proceed against the debtor Levy, that six days later a receiver was appointed, upon whose bond Michael Levy's brothers-in-law and judgment creditors as well, Samuel and Morris Cohen, became the sureties. Having given his bond, the receiver seems to have regarded his official labors as ended.

During the progress of the trial the generosity of the relative creditors towards Louis M. Levy evidently came to be regarded as embarrassing, for several of them testified in effect, that their action was induced by the desire to secure employment to Michael D. Levy. Mr. Cohen was asked:

" Q. Did you make a condition with reference to his employing Michael D. Levy ? ˙ A. I mentioned it. I mentioned that it would be a great help to him, and the fact that Michael D. Levy was my brother-in-law, and that he would be getting employment would be an advantage, and if he could give him employment, that I would like it. Q. What was your purpose in buying goods at the sheriff's sale ? A. The purpose was that Louis M. Levy could continue the business and give my brother-in-law, Michael D. Levy, employment."

Morris Batt testified to a conversation with Louis M. Levy, in which " it was said between us that he was to go on with the business himself. I told him I should like him to employ my brother-in-law, Michael D. Levy, in the business. He agreed to that partly ; I presume he agreed to it. * * * He did employ Michael D. Levy and the other two brothers in the business."

That the parties had it in mind from the beginning to help the firm is evidenced by their conduct and further assured by admissions, such as we have quoted. To some of the witnesses it seemed important to deny that they had intended to secure, under cover of a third person, the business to the firm, and so they explained that

their conduct was not for that purpose, and that they helped Louis M. Levy in order ·to insure employment to the brothers in the late firm.

This, according to their own confession, was the purpose, and adding to it the circumstances, to some of which we have referred, the conclusion is irresistible that the parties thoughtfully planned a way by which they hoped and expected to secure to the members of the firm a livelihood out of a business which, in the ordinary course, would have been taken from them by creditors.

We have thus called attention to some of the circumstances which lead us to the conclusion that the determination of the trial court, that the scheme was a fraudulent one, intended to cheat and defraud the creditors of the firm, was well grounded.

Necessarily we have been obliged to refrain, because of the already unreasonable length of this discussion, from an allusion to the many important and pregnant facts with which this large record abounds. While no reference has been made to the evidence of strict legal procedure, and the protestations of good faith on the part of the defendants upon which their counsel so strongly relies, it has been considered, and it may be said, that the steps do seem to have been carefully taken, indeed, almost too carefully, and the defendants have not failed to assert that their conduct was well meant and lawfully intended. But the circumstantial evidence · overbears their denial of guilt.

. It is said that some of the judgments are not so attacked as to permit a finding that they are without consideration.

True, but it matters not whether the firm was indebted in the sums confessed or not, if the object sought to be secured by a succession of steps, of which the confession was one, was to cheat and defraud the creditors of the debtor firm. (*Billings* v. *Russell*, 101 N. Y. 226.)

The appellants contend that the judgment, in so far as it directs "Cohen Brothers & Co." to pay to the receiver upwards of $14,000, is erroneous, in that it requires him to pay nearly $3,500 more than he received. "Cohen & Co." did not collect the money it is true, but they did have the accounts. They saw fit to transfer them to Louis M. Levy. Having obtained the accounts through fraud, the court has properly charged them with their value.

The exceptions to which our attention has been called, do not merit discussion.

The judgment should be affirmed, with costs.

FOLLETT, J., concurred.

O'BRIEN, J.:

Although it be assumed that the judgments, transfers, etc., are valid because founded on a valuable consideration, and have not been successfully assailed for fraud, the question still remains: Can these be used and employed as a shield so as to hold off all the other creditors while practically returning the property to the possession and subjecting it to the control of the debtors? That this cannot be done has already been determined in the cases of *Stimson* v. *Wrigley* (86 N. Y. 332); *Abegg* v. *Schwab* (31 N. Y. St. Repr. 139), and *Billings* v. *Russell* (101 N. Y. 226).

I, therefore, concur for affirmance.

Judgment affirmed, with costs.