# 542                           GALLE *v.* TODE.

SAMUEL GALLE and SAMUEL KARLEN, Respondents, *v.* ADOLPH TODE
and Others, Appellants.

*Confession of judgment in fraud of creditors — when admissions of an attorney
are evidence against his client — declarations to impeach a judgment by confession
— declarations of conspirators — trial by a referee — technical rulings upon evidence — refusals to find.*

If a confession of judgment is part and parcel of a scheme to remove property
from the reach of creditors, the judgment is tainted by the intent of the parties
confessing it, and may be avoided at the suit of other creditors of the judgment debtor, although the plaintiff in the judgment may be entirely innocent,
and although his debt may be entirely honest.

It is not the law that fraud cannot be predicated upon a judgment confessed for
a *bona fide* indebtedness, in the absence of some agreement between the parties
thereto whereby the debtor is to be benefited.

The party in whose favor a judgment is confessed is not a purchaser for a valuable consideration within the exception of the Statute of Frauds, and may be
affected by the fraudulent intent of the debtor without having participated
therein.

The rule which renders an attorney incompetent to make admissions in conversations with third persons which will be evidence against his client as to the facts
of his case, does not apply where the client refers a person to his attorney for
the purpose of having him state the client's position with respect to any
situation.

The rules, that declarations of a defendant who has confessed judgment, made
in the absence of the judgment creditor, are inadmissible to impeach the judgment, and that the declarations of a grantor after the conveyance are inadmissible to impair the title of his grantee, do not, after a conspiracy to hinder,
delay and defraud creditors has been established, render the acts and declarations of the conspirators incompetent against those claiming the fruits of the
conspiracy.

When, in an action in equity based upon an intent to defraud creditors, tried
before a referee, the findings and conclusions of the referee are supported upon
competent and uncontradicted evidence, mere technical rulings upon evidence,
which did not affect the result or do injury, are not available to invalidate the
judgment.

Where there is any evidence to sustain the findings of a referee, his refusal to
find a fact which is but a link in the chain of propositions logically leading to a
different result is not erroneous.

To make exceptions to a refusal of a referee to find a fact sufficient ground for a
reversal, it must appear that had he found as requested the result would have
been affected.

APPEAL by the defendants, Adolph Tode and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the city and county of New York on the 22d day of October, 1892, upon the report of a referee.

This action was brought by judgment creditors to set aside what is claimed to have been a fraudulent disposition of property made by the defendant debtors, Tode and Wulling, by means of judgments confessed in favor of various parties, under which the property was sold by the sheriffs of New York and Orange counties. The relief sought is that such judgments be held to be fraudulent and void as against the plaintiffs, and that plaintiffs be first paid out of the proceeds of the property in the hands of the sheriffs.

In March, 1891, the debtors, being embarrassed, sought to devise some plan by which they could continue their business and occupy a position where " none of their creditors could attach or levy upon or seize any of the property so transferred." In furtherance of this plan or intent, a corporation was formed in which, besides the debtors, there were Messrs. Levi, Materne and Studeman, the first two of whom were creditors and friends, and the last a bookkeeper in the employ of the debtors. The capital stock was neither paid in nor issued, but the property of the debtors was transferred to this corporation. No secrecy was made of the purpose for which the corporation was formed, the debtors themselves avowing that it was formed " in order to prevent the creditors from seizing the property."

Concluding that the creditors were thus held in a safe position, a meeting was called by the debtors with a view to compel such creditors to enter into a settlement. At such meeting the creditors undertook to formulate a plan by which the assets could be placed in such a position that all the creditors might be treated alike and equitably. Apparently acquiescing in this suggestion, an understanding was had between both debtors and creditors present that no action should be taken by either until such time as a plan of settlement might be devised. In violation, however, of this understanding, and under an arrangement by which confessions of judgment should be first given to Levi, then to Materne and some six or eight others, none of whom except the two named had knowledge of the debtors' intention, confessions were made and the assets were

transferred back to the debtors, in whose possession they were seized under executions upon the judgments thus confessed.

March twenty-sixth was the date fixed upon for the final meeting of the creditors, when the plan of settlement was to be presented by a committee appointed for that purpose; but on the day preceding the retransfer of assets and the confession of eight judgments were made, and all the assets transferred were thereafter sold under the executions; and with the exception of the Bowery store, which was undesirable property, the other assets, including the place of business in Fifty-ninth street and the Monroe Cheese plant, which was made into a corporation, passed into the hands of the wives of the debtors as nominal owners, but were really controlled by the debtors themselves, who, under co-partnership articles between the wives, were made managers of the business.

Before this property, however, got into the possession of the debtors and their wives, and after it had been seized under the executions issued upon the confessed judgments, feeling certain that the other creditors were then at bay, a meeting was called by the attorneys for the debtors, who also represented the judgment creditors, for the twenty-eighth of March, for the purpose, as stated in the notice, of presenting a statement of affairs and submitting a proposition of settlement.

Upon such facts, the referee decided that the plan thus devised was fraudulent, because entered into with an intent to hinder, delay and defraud the creditors. And from the judgment entered upon his decision this appeal is taken.

*Emanuel J. Myers,* for the appellants.

*A. J. Simpson,* for the respondents.

O'BRIEN, J.:

The questions presented on this appeal have been so many times passed upon in the various litigations growing out of the attempted disposition by the debtors of their property, that it would appear needless to repeat the reasons in support of this judgment.

Upon the motion to vacate the attachment in the common-law action, which is the basis of the present suit in equity, an opinion upon the facts then appearing was delivered by Mr. Justice PAT-

TERSON, and upon an appeal to this General Term, by the presiding justice. (*Galle* v. *Tode*, 60 Hun, 132.) In addition to these, the record before us is supplemented by an opinion by the referee, which succinctly states the facts, and correctly states the principles of law which should control, supporting, as it does, the decision rendered by him.

The appellants, however, have with so much earnestness urged .upon us a reconsideration of the questions, that we feel that a brief summary of the facts such as has been given, together with a review of the authorities, will demonstrate that there are no questions presented upon this appeal except such as have been frequently passed upon in the class of cases to which this belongs.

The most strenuous argument against the validity of the judgment is, that, inasmuch as the judgments were confessed for *bona fide* debts, and there was a failure to show any fraudulent intent upon the part of some at least of the persons in whose favor the judgments were confessed, this is fatal to a conclusion that such judgments were fraudulent.

In answer to this argument, we would repeat what we have frequently endeavored to point out in construing the Statute of Frauds, that it is not the intent of the person in whose favor a conveyance is made or a judgment confessed, that is to control, but it is the intent of the debtor. By the terms of the first section of the Statute of Frauds we find it expressly stated that every conveyance of property, and other acts done as therein enumerated, including a " decree or judgment suffered, with the like intent as against the persons so hindered, delayed or defrauded, shall be void." (4 R. S. [Banks' 8th ed.] 2593.) And to emphasize the purpose of this statute as to those who alone can be protected against its sweeping provisions, we find by a subsequent section that protection is extended only to *bona fide* purchasers for value. (4 R. S. [Banks' 8th ed.] 2592.)

Upon this question, therefore, we need but quote, as expressive of the view of this court, from the opinion of the presiding justice in the case of *Simons* v. *Goldbach* (9 N. Y. Supp. 360) wherein he says: " There was evidence adduced by the affidavits that there was a scheme upon the part of these defendants to remove their prop-

erty from the reach of their creditors, and that the attorney who issued this execution and who was the attorney for the entry of the confession of judgment, was cognizant of this intention. The entry of the judgment and the carrying out of the intention was evidently one scheme; but it is urged that the knowledge of this attorney of this attempt cannot affect the plaintiff, because his action cannot be said to involve the plaintiff in a scheme to cheat the creditors of the defendants, so as to have his honest judgment set aside. In this proposition the learned counsel forgets that it is not necessary, in order to invalidate this judgment, that the plaintiff had cognizance of the scheme to defraud the creditors. It is sufficient, even if this judgment was confessed upon an honest debt, that it was part and parcel of a plan by which some portion of defendants' property was to be removed and concealed from their creditors to render such judgment absolutely void, because all the acts of the defendants in the carrying out of such a scheme are necessarily tainted with the same infirmity. In the case of an assignment with preferences, although honest debts may be preferred, yet if any portion of it is tainted with the intent to defraud creditors the whole assignment falls. So in the case of the confession of a judgment, if it is part and parcel of a scheme to remove property from the reach of creditors, although the plaintiff in the judgment may be entirely innocent, and although his debt may be entirely honest, the judgment is tainted by the intent of the parties confessing the same."

And in *Illinois Watch Co.* v. *Payne,* another decision of this General Term (11 N. Y. Supp. 410), it was said : " All that it (the statute) has required is that the judgment shall be suffered or permitted with this intent, and its existence in the mind of the debtor fulfills and satisfies the language of the statute, and it has been so construed and administered by the courts. (*Starin* v. *Kelly,* 88 N. Y. 418 ; *Loos* v. *Wilkinson,* 110 id. 195.) Against that intent an innocent purchaser for a valuable consideration has alone been protected, and the party in whose favor a judgment has been fraudulently confessed is not such a purchaser."

These we deem sufficiently expressive of our dissent from the appellants' contentions ; *first,* that fraud cannot be predicated upon a judgment confessed for a *bona fide* indebtedness, in the absence of some agreement between the parties thereto whereby the debtor is

to be benefited; or, *second,* that the creditors in whose favor the judgments were confessed are purchasers for value, and cannot be affected by the fraudulent intent of the debtors, unless they participated therein.

Another position assumed by appellants is, that the intent of the debtors Tode and Wulling to commit a fraud will not prevent them from purging themselves therefrom by abandoning the enterprise and devoting their property to the payment of their just debts.

The answer, however, to this proposition is to be found in the fact that the case is entirely barren of any evidence to show that the debtors at any time purged themselves of the intent to commit a fraud; but, on the contrary, the evidence is consistent only with the view that the intent was ever present in all the plans and schemes devised by them, and which would result, if not held to be void, in their enjoying the fruits of their fraudulent acts by obtaining, through their wives, the possession, control and management of the property, free from any claims of their creditors. The only conclusion consistent with the evidence is, that not only did they not abandon the enterprise fraudulently entered upon, for the purpose of applying their property to the payment of their just debts, but that they have secured, and would continue to secure, immunity from the just attacks of their creditors if the scheme devised were not held to be void.

As we do not, therefore, regard the questions presented as new, we think that sufficient has been said to show the counsel for appellants that nothing in his argument has convinced us that the settled view of this court in actions of this character, so frequently enunciated and consistently upheld, should be now departed from. Upon the facts appearing, we fail to see how any other conclusion could be reached than that arrived at by the learned referee. The debtors started with an intent to place the property where the creditors could not reach it, and while thus holding them at arms' length, compel them to make just such a settlement as they saw fit to propose, and when it was found that this plan was likely to be abortive, the subsequent steps were indicative of the original fraudulent intent that no portion of the property should be applied to the payment of their debts, and the judgments confessed were a scheme by which they planned, and successfully as it would appear, to get

the property practically under their own control by having it placed in the names of their wives, and thus, secure from their creditors, to reap the reward of their fraudulent scheme.

It is insisted, however, that while the findings of the referee may be supported by the evidence, the judgment must be reversed, because a great portion of the evidence upon which such findings rest was incompetent and improperly admitted by the referee.

To show how fallacious the argument in support of this position is, we will first take the objections made to the evidence admitted as separately urged before the referee and then group the objections together for the purpose of showing to what an absurd conclusion we should come if the argument of the appellants were to prevail.

The first objection is that to the admissibility of testimony given by a lawyer, who was appointed chairman of the meeting of creditors, when it was thought feasible to effect a plan of settlement between the debtors and all the creditors. While considering this plan, this witness' attention was called to the bad faith of the debtors and their counsel in entering the judgments by confession in violation of the agreement that no such action should be taken; he thereupon called upon one of the debtors for an explanation, who, instead of giving it, stated that he had nothing to say, but referred the witness to his counsel, under whose advice he said he was acting. This witness accordingly saw the attorney, and it was to the statement of what this attorney then said to the witness that the objection was made, the argument in support of the objection being that any statements of the attorney were incompetent and inadmissible as against the debtors.

There is unquestioned authority for the proposition that an attorney is not competent to make admissions in conversation with third persons, which will be evidence against his clients as to the facts of his case, and that the admissions of an attorney are not competent testimony to bind clients. But these are subject to the modification that where the client refers a person to his attorney for the purpose of having him state the client's position with respect to any situation, thus conferring authority upon the attorney to speak for him, and leading the person seeking the information to rely on the right of such attorney to speak for the client, the reason for the rule referred to by the appellants is wanting.

Another objection is to the ruling of the referee in admitting testimony of the declarations and acts of the debtors in the absence of and without the concurrence of the judgment creditors. This objection, it is urged, is supported upon the ground that the cases hold, *first*, that declarations of a defendant, who has confessed judgment, made in the absence of the plaintiff, are inadmissible to impeach the judgment, and, *second*, that the declarations of a grantor after the conveyance are inadmissible to impair the title of his grantee. The charge here was that certain persons conspired together to cheat and defraud. Having established such a conspiracy, can it be claimed that the acts and declarations of the conspirators are not competent against those claiming the fruits of the conspiracy?

Without, however, further discussing them separately, let us see to what lengths the appellants' argument would go if we consider the objections grouped together.

Certain persons enter into a conspiracy with intent to hinder, delay and defraud, and it is argued that upon it appearing that some of the conspirators, together with certain innocent third parties selected by them, are nominally or ostensibly benefited, it cannot be shown by the acts and declarations of those who are engaged in the fraud that it was intended to cheat creditors, and that it did in fact benefit principally the fraudulent actors.

That is the case here presented. The debtors and two creditors, with the aid of their attorneys, planned a scheme under which, by means of judgments, they intended to hinder, delay and defraud their creditors; and upon the evidence of such fraud being apparent and an explanation demanded, it is insisted that one who had a right to know, and who was referred to the attorney who acted for all of the conspirators by one of them, was not entitled to state what that attorney told him because such declarations are not binding upon the clients, and that the declarations and acts of the debtors cannot be given unless it can be shown that those in whose favor the judgments were confessed were present at the time. The result would be, as we understand the appellants' argument, that before the declarations or acts of any of these people, who had conspired together and arranged a plan by which their creditors were to be defrauded, can be used in evidence against them, they are all to be brought together in one place and then interrogated, and that only

the admissions or declarations so made would be binding ; and that with respect to their acts, unless it were likewise shown that what each one did was done in the presence of all the others, the evidence of such acts would be incompetent.

It is not necessary, however, to pursue a discussion of these objections and many others which have been urged, and which we regard as frivolous, because though one or two of them might be technically right, they would not affect the validity of this judgment.

Upon competent and uncontradicted evidence the findings and conclusions of the referee are supported, and in this state of the record, having in mind the fact that this case was one in equity, tried before a referee, mere technical rulings upon evidence which did not affect the result or do injury would not be available to invalidate the judgment. As held in *Donovan* v. *Clark* (138 N. Y. 633), where the action was on the equity side of the court to establish a partnership and for an accounting, in such cases exceptions to evidence should be disregarded unless the appellant can show that injustice has been done upon the whole case or that the ruling complained of may have affected the result. (See, also, *Pach* v. *Geoffroy*, 67 Hun, 406.)

The only remaining question is that in which it is insisted that the findings are irreconcilable with the judgment upon the questions of fraud, and that the referee erred in making certain findings for the plaintiffs and in refusing to find for the defendants. The answer to this, in addition to what has already been said, we think, is to be found in *Crim* v. *Starkweather* (136 N. Y. 635) and *Baldwin* v. *Doying* (114 id. 312), the former of these cases holding that where there is any evidence to sustain the findings of a referee, his refusal to find a fact which is but a link in the chain of propositions logically leading to a different result is not erroneous, and the latter, that to make exceptions to a final refusal of a referee to find a fact sufficient ground for a reversal, it must appear that had he found as requested, the result would have been affected.

Our conclusion, therefore, is that the judgment is right and should be affirmed, with costs.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs.