### KING et al. v. MUNZER et al.

(Superior Court of New York City, Equity Term. April, 1894.)

FRAUDULENT CONVEYANCES—CONFESSION OF JUDGMENT.

Defendants confessed judgments in favor of several members of their families, sufficient in amount to absorb their entire property, to the exclu-sion of other creditors. A few months before they had reported to a mer-cantile agency large assets, and no liabilities. Part of the claims on which the judgments were confessed were individual debts of one member of defendant's firm, which the firm endeavored to make a partnership matter. Before the confession of judgment, defendants withdrew their cash from the bank, and divided it amongst themselves. *Held*, that the judgments should be set aside as in fraud of creditors.

Action by Bennett J. King and others against Alfred Munzer and others to set aside three judgments confessed by the firm of A. Munzer & Co., as in fraud of plaintiffs and other creditors, and to

set aside a transfer of book accounts on the same ground.    Judgment for plaintiffs.

Blumenstiel & Hirsch, for plaintiffs.

M. L. Erlanger, for defendants A. and R. Munzer and J. and S. Mayers.

C. C. Leeds, for defendant Rees.

J. M. Allen, for defendant Misch.

McADAM, J.    The plaintiffs, as judgment creditors of the firm of A. Munzer & Co., composed of Alfred Munzer and Jacob Mayers, attack three confessions of judgment made by that firm; one in favor of Moses Misch for $2,518.40, one in favor of Rachel Munzer for $1,168.40, and one in favor of Henry P. Rees for $1,018.40.    The ground alleged is that these judgments were confessed to hinder, delay, and defraud creditors of the firm, and especially the plaintiffs.    The plaintiffs also seek to set aside as fraudulent a transfer of the firm's book accounts, made by it to Samuel Mayers, a brother of Jacob Mayers, one of the firm.    The confession to Moses Misch, though purporting to be made for a firm liability, included an individual debt of $1,200 owing by Jacob Mayers, one of the firm, which the firm endeavored to transform into a partnership transaction.    The confession to Rachel Munzer, the wife of the defendant Alfred, was for moneys advanced by her to the firm, but these moneys were the savings of contributions which Alfred had previously made to her, which, in the form of accumulations, were returned. The confession to Rees was in point of fact given to secure him for discounts which he had procured for the firm on its notes indorsed by him.    If the confession had been made to secure his contingent liability as indorser on these notes, it might have been upheld. Code, § 1273.    But the confession purports to have been made to secure a sum actually due for money loaned, when, as matter of fact, there was no such debt in existence.    The effort to prove that the transaction was a loan failed.    The nature of the transaction should have been truly described, as statements in a confession of judgment contrary to the fact may lead to unpleasant inferences as to the motives which induced the misstatement.    If the confession to Rees had stated the facts truthfully, his judgment could not have been enforced until the contingent liability he was under had ripened into a debt.    Id. § 1277.    The purpose evidently was to give him a judgment he could use at once, and this to the injury of creditors of the debtors.    It has been held that a confession may be set aside in part, and upheld as to the residue.    Hoppock v. Donaldson, 12 How. Pr. 141; Marks v. Reynolds, 12 Abb. Pr. 403; Frost v. Koon, 30 N. Y. 428.    But where the confessions are made to cheat and defraud creditors they must be held to be inoperative against the latter for any purpose.    As to the creditors defrauded, the judgments, if void in part, are void in toto.    This is the elementary rule applicable to all fraudulent devices.    The three confessions of judgment were drawn by Mr. Erlanger, who acted as attorney for all the parties, and were filed December 29, 1892.    On

January 10, 1893, a further confession was filed in favor of Mr. Er-langer, the attorney, for the sum of $600 for legal services rendered by him between December 26, 1892, and January 10, 1893. The parties to the transaction are all related to each other by blood or marriage, and by the confessions and transfer aforesaid all the property of the firm was appropriated by them to the prejudice of the other creditors having claims to the extent of about $18,000. On December 27, 1892, there was drawn out of the People's Bank by the debtors $735, which they divided and retained for their own use, and on December 29th—the day the judgments were confessed —they drew $830, and paid it over to Morris Mayers, another brother of Jacob, for the purpose of securing him on an accommodation note which he had indorsed for the firm, which was not then due, and would not have matured until the January following; so that in every conceivable form the family and relatives took care of themselves, leaving the other creditors out entirely. In addition to these circumstances, goods belonging to the firm, which were in Chicago, were brought on to New York, that they might be levied on under the confessions and the proceeds turned over to the favored creditors; and by force of the general scheme, which was successfully carried out, the firm stripped itself of everything in the nature of assets, and became hopelessly insolvent. In February, 1890, in its report to the Dun Mercantile Agency, the firm states its assets to be $17,400, and in January, 1891, it placed them at $22,632, with no liabilities. In April, 1892, it reported to Brad-street's Agency that "its assets were $20,500; no borrowed money;" and yet, eight months afterwards, to wit, in December, 1892, with-out any satisfactory account for the sudden change, such as fire, robbery, or other unusual calamity, the firm is found to owe $18,000 to creditors, without including the confessions of judgment or the indebtedness to Samuel Mayers, for which the accounts were as-signed. It is familiar law that persons furnishing information to mercantile agencies as to their means and pecuniary responsibility are to be presumed to have done so to enable the agency to com-municate the information to persons interested for their guidance in giving credit, and any misrepresentation in respect thereto is a fraud for which they are answerable to those deceived. Eaton, Cole & Burnham Co. v. Avery, 83 N. Y. 31. See cases cited in Macullar v. McKinley, 99 N. Y., at page 354, 2 N. E. 9; Moak, Un-derh. Torts, 525.

The $4,000 expressed in the transfer of the accounts to Samuel Mayers was made up of about one-half for money lent to his brother Jacob on his individual account, which the parties, by subsequent transactions undertook to make a firm liability. The circumstances stated are so strong and cogent that, taken together, they establish to the judicial mind, beyond any reasonable doubt, the material fact that there was a combination and conspiracy between all the parties, not only to hinder and delay the honest creditors of the firm, through the means employed, but to defraud them, by rendering futile all efforts to collect their demands by the usual legal means. See White v. Benjamin, 3 Misc. Rep. 490, 23 N. Y. Supp. 981. The

fraudulent combination and purpose having been established, it would have made no difference in the result, even if the persons holding the confessed judgments had been firm creditors to the full extent thereof. Every transfer of property must be made on a good consideration, and bona fide. If it is not made in good faith, it is void, although the grantee pays a full consideration, for the law never allows one man to assist in cheating another (see cases collated in Bump, Fraud. Conv. 230); and this principle, as will be seen presently, applies to judgments as well.

In Simons v. Goldbach, 56 Hun, 204, 9 N. Y. Supp. 360, affirmed 123 N. Y. 637, 25 N. E. 953, the court said:

"There was evidence adduced by the affidavits that there was a scheme upon the part of these defendants to remove their property from the reach of their creditors, and that the attorney who issued this execution, and who was the attorney for the entry of the confession of judgment, was cognizant of this intention. The entry of the judgment and the carrying out of the intention was evidently one scheme; but it is urged that the knowledge of this attorney of this attempt cannot affect the plaintiff, because his action cannot be said to involve the plaintiff in a scheme to cheat the creditors of the defendants, so as to have his honest judgment set aside. In this proposition the learned counsel forgets that it is not necessary, in order to invalidate this judgment, that the plaintiff had cognizance of the scheme to defraud the creditors. It is sufficient, even if this judgment was confessed upon an honest debt, that it was part and parcel of a plan by which some portion of defendants' property was to be removed and concealed from their creditors to render such judgment absolutely void, because all the acts of the defendants in the carrying out of such a scheme are necessarily tainted with the same infirmity. In the case of an assignment with preferences, although honest debts may be preferred, yet, if any portion of it is tainted with the intent to defraud creditors, the whole assignment falls. So in the case of a confession of judgment, if it is part and parcel of a scheme to remove property from the reach of creditors, although the plaintiff in the judgment may be entirely innocent, and although his debt may be entirely honest, the judgment is tainted by the intent of the parties confessing the judgment."

In Galle v. Tode, 74 Hun, 542, 26 N. Y. Supp. 633, the court said:

"The most strenuous argument against the validity of the judgment is that inasmuch as the judgments were confessed for bona fide debts, and there was a failure to show any fraudulent intent upon the part of some, at least, of the persons in whose favor the judgments were confessed, this is fatal to a conclusion that such judgments were fraudulent. In answer to this argument we would repeat what we have frequently endeavored to point out in construing the statute of frauds, that it is not the intent of the person in whose favor a conveyance is made or a judgment confessed that is to control, but it is the intent of the debtor. By the terms of the first section of the statute of frauds we find it expressly stated that every conveyance of property, and other acts done as therein enumerated, including a 'decree or judgment suffered, with the like intent as against the persons so hindered, delayed, or defrauded, shall be void.' 4 Rev. St. (Banks' 8th Ed.) 2593. And to emphasize the purpose of this statute as to those who alone can be protected against its sweeping provisions, we find by a subsequent section that protection is extended only to bona fide purchasers for value. Id., § 2592."

The court said, with respect to proof of a conspiracy:

"The result would be, as we understand the appellants' argument, that before the declarations or acts of any of these people who had conspired together and arranged a plan by which their creditors were to be defrauded, can be used in evidence against them, they are all to be brought together in one place, and then interrogated, and that only the admissions or declarations

so made would be binding; and that with respect to their acts, unless it were likewise shown that what each one did was done in the presence of all the others, the evidence of such acts would be incompetent. It is not necessary, however, to pursue a discussion of these objections and many others which have been urged, and which we regard as frivolous, because, though one or two of them might be technically right, they would not affect the validity of this judgment."

The plaintiffs were obliged to prove their case by the defendants, who are charged with the wrongdoing.

In Becker v. Koch, 104 N. Y. 402, 10 N. E. 701, the court said:

"With regard to such witnesses, it is well settled that all the rules applicable to the examination of other witnesses do not, in their strictness, apply. An adverse witness may be cross-examined, and leading questions may be put to him by the party calling him, for the very sensible and sufficient reason that he is adverse. * * * What favorable facts the party calling him obtained from such witness may be justly regarded as wrung from a reluctant and unwilling man, while those which are unfavorable may be treated by the jury with just that degree of belief which they may think is deserved, considering their nature and the other circumstances of the case." Page 404, 104 N. Y., and page 701, 10 N. E. "It is a good, general rule that the credibility of a witness is matter for the jury, and the fewer technical obstructions there are to the practical operation of that rule the better."

And in Vietor v. Levy, 72 Hun, 263, 25 N. Y. Supp. 644, the court said:

"In examining and weighing the evidence which induced the judgment, we should have in mind that he who alleges fraud must prove it; that the burden rests upon him to show affirmatively the facts and circumstances necessarily tending to establish the probability of guilt, and at the same time remember that those who attempt to perpetrate frauds take all the precautions that occur to them to make the transaction appear honest, and rarely confess their misconduct, whether under oath or otherwise; that in such case proof of fraud must be established, if at all, by facts and circumstances which deny the protestation of commercial virtue, which nearly always falls from the lips of those who try to outwit the law."

In criminal cases, a circumstance calculated to excite suspicion against the prisoner is insufficient even to put him on his defense. But, the moment additional facts are shown to have existed in the same case, giving rise to additional presumptions against the accused, though individually of the same slight kind, a chain or body of evidence begins to form; and from the mere circumstance of the concurrence or coincidence of such presumptions, bearing upon one point, or in one direction, and mutually aiding each other, they acquire a force and weight eventually sufficient, not only to shift the burden of proof, but in some cases to amount to evidence of the most convincing kind. Burrill, Circ. Ev. 65, 66. The circumstances disclosed by the evidence dovetail and link one with the other symmetrically, and form a solid chain of evidence pointing to the direction of combination and conspiracy on the part of the defendants that is so cognate and cogent in character as to exclude every hypothesis of anything different. If necessary effect is to be ascribed to its author cause, the conclusion is strengthened, not impaired. In view of the facts, the surrounding circumstances, the inferences to be drawn from them, and in the light of the adjudications cited, it follows

that the plaintiffs are entitled to judgment declaring the confessions of judgment and transfer fraudulent and void as against the plaintiffs, and directing the defendants to account for the proceeds of the property which may have reached their hands. Decree accordingly, with costs.